## DILL v. ACE WIRE LINE CORE DRILLING CO. et al.

### No. 2080.

Court of Appeal of Louisiana. First Circuit.

Jan. 30, 1940.

E. L. Stewart, of DeRidder, for appellant.

McCoy, King & Jones, of Lake Charles, for appellees.

LE BLANC, Judge.

This is a suit for compensation in which the demand is for the maximum amount allowed under our Compensation Statute, Act No. 20 of 1914.

Plaintiff was employed as foreman in the Lake Charles branch shop of the Ace Wire Line Core Drilling Company of Houston, Texas, which company is engaged in the manufacture of core barrels and other machinery and equipment used in the oil industry. His work consisted in hardening

steel in the process of which a compound known as Haughton's Hardsurfacing Compound, containing potassium cyanide is used.

In his petition plaintiff alleges that on March 22, 1937, while he was performing services in his line of employment, he requested the Manager of his employer's business to furnish him with the compound they used but instead, he was furnished with cyanide which is a deadly poisonous drug. He avers that he used the poisonous substance by applying it to the heated steel with a spoon, about eighteen inches long, made out of a welding rod. He alleges that there was a poisonous gas or fume created by the contact of the cyanide with the hot steel, which gas or fume penetrated his skin and approximately three days thereafter his skin broke out on his arms, legs and body with a severe case of chemical dermatitis. He then sets out the treatment he received, in spite of which his condition became worse and he became so seriously affected with eruptions over the entire surface of his skin that it was impossible for him to do anything. He alleges that his wages were $50 per week or $200 per month and prays for a judgment for compensation at the rate of $20 per week for four hundred weeks and the further sum of $250 for medical expenses against both his employer and its compensation insurance carrier, United States Fidelity and Guaranty Company in solido.

The defendants filed a joint answer in which they admit plaintiff's employment at the wage alleged by him but deny that he sustained an accidental injury in March 1937, or at any other time, which comes within the scope of the Workmen's Compensation Statute, Act No. 20 of 1914. They admit that he complained about and discussed with them the rash or skin eruption which had broken out over his body but they deny that the same is a result of any injury suffered by him while in the employ of either of them. In the alternative they plead that if the eruption he complains of was caused by gases or fumes generated by chemicals used by him in his work, the same constitutes an occupational disease which is not compensable under the Employer's Liability Law, Act No. 20 of 1914.

After trial below judgment was rendered in favor of the defendants and against plaintiff and the latter has appealed.

There is no doubt that plaintiff did have a severe attack of dermatitis. However, according to the testimony, at the time of the trial of his case he seems to have been making good progress toward a cure. What particular type or form he had, the testimony does not definitely show. Some of the experts are of the opinion that it is a chemical dermatitis which may have been caused by fumes or gases generated by the potassium cyanide which he was using while others don't think, from the manner in which it developed, that that was possible. One of them believes that possibly plaintiff was allergic to a specific which he was taking in the treatment of malaria and that may have been the cause of the skin eruption.

A rather logical view to take of the matter and one which impresses the lay mind is that if the fumes or gases generated from the cyanide would have penetrated any part of the plaintiff's body it would have been the exposed parts that would have been affected first, especially the mucous membranes and the lungs through the nasal passages, instead of those that were protected by his clothing such as in the crouch, around the rectum or on his shin where he says the eruption first developed. Besides, the medical experts agree that potassium cyanide is such a violent poison that in attacking its victim immediate symptoms such as dizziness, pallor, incoordination, unsteadiness in gait, extreme exhaustion and others are produced. According to their testimony it requires a very small amount of this drug indeed to cause death.

Whilst in testifying plaintiff did state that upon the second application of the cyanide on the morning of March 22, 1937, he experienced a burning, drawing sensation about his face, arms and hands, it is significant that in a signed statement given by him on June 11, 1937, when the matter was then being investigated, he made no reference to anything of that kind and in fact made no mention of having had any symptoms whatsoever. As a matter of fact in that statement he states that he does not know where, when or how he contracted the infection. In concluding his remarks in the written reasons for judgment assigned by him, the district judge makes particular reference to the discrepancy between the plaintiff's own testimony and his aforesaid statement made at a time unsuspicious.

We quote that part of the district judge's written reasons as follows: "The difference between his statement and his testimony, together with the testimony of the experts, leaves a doubt in the mind of the court which must be overcome before judgment can be rendered in his favor." After a careful consideration of the entire record in the case we were left with the same doubt and agree with the district judge in the conclusion reached by him.

The judgment appealed from being found correct, the same is hereby affirmed.