REGAN, Judge.
Plaintiff, Louis Emilien, a common laborer, instituted this suit against the defendants, National Gypsum Company and its compensation insurer, New Amsterdam Casualty Company, endeavoring to recover workmen’s compensation at the rate of $30 per week for four hundred weeks, subject to a credit of $930 for compensation paid, for total and permanent disability resulting from an injury to plaintiff’s right foot and ankle incurred- on July 25, 1956, when some gypsum boards which were being loaded in freight cars shifted and fell, causing the above injuries.
Defendants answered and admitted the occurrence of the accident but asserted that as of February 21, 1957, plaintiff had recovered and was able to resume his former occupation and therefore no additional compensation was due.
From a judgment awarding the plaintiff compensation at the rate of $10.23 per week for a total of 125 weeks commencing July 26, 1956, for 20% permanent partial loss of use of his right foot, subject to a credit of $930 for compensation paid, plaintiff has prosecuted this appeal.
The record reveals that plaintiff was employed on July 25, 1956, by the National Gypsum Company as a boxcar loader and when the accident occurred he was directing the placement of a load of gypsum *107 boards on a platform truck when the outer stack thereof shifted and fell on his legs ■ resulting in an injury to his right ankle which we shall hereinafter medically de-' scribe.
After the occurrence of the accident plaintiff was removed to Flint-Goodridge Hospital where he was examined by Drs. Lyon, Baker, and Paine, who after administering emergency treatment referred him to Dr. James L. LeNoir, an orthopedist, for treatment. His injuries were diagnosed by this' doctor as :
“(1) Comminuted fracture right' fibula, lower end, post-traumatic. (2) Fracture right fibula, medial malleol-us, complete, displaced, post-traumatic. (3) Laceration right ankle, medial malleolar area, post-traumatic. (4) Dislocation ankle joint, post-traumatic.”
Plaintiff was hospitalized from July 25 to August 20, 1956.
Dr. LeNoir continued his treatment of plaintiff after he was discharged from the hospital; and on January 21, 1957, he advised plaintiff to engage in light work and to return to his office for further examination at the end of thirty days. Plaintiff then attempted to procure light work at the plant of his employer but the management refused to accept him on this basis.
Plaintiff was again examined by Dr. LeNoir on February 21, 1957, and was'then discharged as fully able to resume his former employment. Dr. LeNoir at this time concluded that plaintiff possessed a 20% permanent partial' disability of the ankle and was of the opinion that further improvement would occur.
Plaintiff returned to work on either February 25 or 27, 1957, and worked the full eight hour night shift. The next day he reported to Dr. LeNoir and informed him that his right ankle was swollen and had caused. him considerable pain during this period of work. Plaintiff, despite following Dr. LeNoir’s advice relative to exercising his ankle, believed that it would not in the' future permit him to do any excessive amount of walking without causing him-severe pain and swelling; therefore, he did' not make any further effort to resume his' former occupation. However, in order to ’ earn a living he began to devote his attention to the work of an insurance agent' which he had done during his spare time while in the employ of the National Gypsum Company.
His mother appeared as a witness and fully corroborated plaintiff’s testimony rel-! ative to pain and swelling of the ankle when he “walks too much” and also “when, the weather is cloudy.”
No useful purpose would be served by indulging in a protracted discussion of the' medical testimony adduced herein or by endeavoring to reconcile it. Suffice it to say in summary thereof that Dr. Irvin S. Cahen, an orthopedist, testified on behalf of the plaintiff and asserted that he has a 25% permanent partial loss of use or function of his right foot and that in his opin- ' ion the plaintiff was permanently and totally disabled from resuming his former occupa-' tion as a laborer.
Dr. James L. LeNoir, also an orthopedist, - testified on behalf of defendants, and in the last analysis he asserted that plaintiff has a 10% or less permanent partial loss of use or function-of his right foot and ex-, pressed the opinion that the plaintiff could resume the same type of laborious work that he had been performing for his employer prior to the accident.
The trial judge found that plaintiff has a permanent partial loss of use or function of his right foot amounting to 20% and that he was not disabled from performing the type of work in which he was engaged when the accident occurred. Consequently he awarded him compensation at the rate of 20% of 65% of his average weekly wage for a period of 125 weeks.
The question which the foregoing facts and medical testimony have posed for our *108 consideration is whether plaintiff is disabled to do work of any reasonable character in conformity with the intent of the compensation statute- — that is, disability to perform work of a similar description, kind, or character, not necessarily the identical position, which the plaintiff was accustomed to performing when the injury occurred.
We are of the opinion that the above question requires an affirmative answer, that is, that plaintiff is permanently and totally disabled within the scope of this law. Neither the compensation statute nor the jurisprudence emanating therefrom contemplates that a laborer in order to earn a living must do so in pain, nor must he do so when it would not only militate against h-is own health and safety but possibly against those of his fellow employees. In order for plaintiff to procure laboring work similar to that in which he was engaged when injured he must be able to compete with able-bodied men in a competitive labor market. Plaintiff, who is afflicted with a permanent partial loss of use or function of his right foot amounting to 20%, as found by the trial court, is not able to compete with other laborers in loading boxcars with heavy gypsum boards for five or six days each week, averaging 50 hours per week, or working at times for as long as 12 hours per day; consequently he is “disabled to do work of any reasonable character” in conformity with the purpose and intent of the statute.
There is, in our opinion, no infallible rule or precedent that we can formulate for guidance in applying the phrase “disabled to do work of any reasonable character” to the innumerable variations of fact posed in each case for the appellate courts’ analysis. However, more justice is apt to be attained when the courts reserve to themselves a broad latitude for the factual individualization of each according to the true civil law concept, which is what we have endeavored to do herein.
Therefore, in view of what we have said hereinabove, we believe that the trial court erred in reasoning that although plaintiff had incurred a 20% disability to his right foot he was not disabled from resuming his former occupation as a laborer.
For the reasons assigned the judgment appealed from is amended so as to award plaintiff $30 per week for 400 weeks for total and permanent disability, less compensation previously paid, rather than 20% of 65% of his average weekly wages for a total of 125 weeks, subject to a credit for compensation previously paid, and as thus amended the judgment in favor of plaintiff and against the defendants is in all other respects affirmed.
Amended and affirmed.
McBRIDE, J., absent.