FRUGÉ, Judge.
This is a workmen’s compensation suit for total and permanent disability and for penalties and attorney’s fees. From a judgment denying total and permanent disability plaintiff appeals. Defendant has appealed that part of the judgment assessing penalties and attorney’s fees for defendant’s failure to pay a certain medical bill in the amount of $523.65.
Plaintiff commenced work with defendant, Alexandria Concrete Company, in April, 1957. Great American Indemnity Company, also a defendant, is the insurer of Alexandria Concrete Company. Plaintiff’s duties were to drive a truck on which *516 there was a cement-mixer. He was also required to ascertain that the cement, gravel and sand properly went into the “mixer” and to set the “mixer” in operation and unload the mixed cement at designated points. In unloading the cement he was required to place a chute in position so that the mixed cement could flow into its proper place. The cement “mixer” was filled by means of automatic loaders under which the truck was driven. These automatic loaders delivered the proper portions of cement, sand and gravel into the “mixer”. The cement mixer is operated by manipulating several levers. On occasion plaintiff had to assist in unloading dry cement from railroad cars. On November 26, 1957 (five months after he commenced work) plaintiff noticed a rash on his face and neck which later began to spread over his body. He sought medical advice and was later hospitalized for seven days as a result of the rash.
Dr. W. H. Hamilton, a dermatologist, diagnosed plaintiff’s condition as “acute cement dermatitis”. He testified that the cement caused the dermatitis. Later it was discovered that as a result of this cement dermatitis plaintiff had developed a chro-mate sensitivity which causes a change of the skin. Dr. Hamilton described chromate sensitivity as follows:
“Chromate is a very peculiar thing in that it apparently develops a change in the skin after a chromate sensitivity. The skin gets dry and they get to where they are very sensitive to heat, heat from bodily exertion or by heat from weather. And any tendency to perspire after they have a chromate sensitivity breaks them out in what we call a chromate eczema which is a rash that is usually on the areas that have been most greatly exposed to the chromate. You usually see it on the face, the neck and the arms where your chromate has come out. A terrific heat light reaction with some eczema formation which is oozing, scaling, and redness and this will fluctuate with the weather and with the activity. It goes on for an indefinite period of time, you can’t say how long it is going to last, in other words, it may last for a few weeks, it may last for several years.”
Dr. H. W. Jolly, Jr., a dermatologist, examined plaintiff on March 28, 1958, at Dr. Hamilton’s request. The gist of his report is that plaintiff has a “cement sensitivation” and that he is “probably sensitive to chro-mates.” And if it is due to chromate sensitivity then it will be a minimum of three months with "absolute avoidance of contact with all chromates” before plaintiff will be cleared. “Complete avoidance of chro-mates is almost an impossible state to attain since chromates are so widely used in modern industry. It has been my experience that in these cases of cement dermatitis, particularly those due to chromate, exacerbations over a long period of time, sometimes several years, are seen.”
Dr. V. Medd Henington, a dermatologist, examined plaintiff on October 21, 1959, at the request of defendant. He testified that chromates are not used to a great extent in modern society. (“I don’t think they are very prevalent.”) However, Drs. Jolly and Hamilton were of the opinion that they are prevalent. From the testimony (and that of Dr. Henington) it appears that chromate is found in: Diesel locomotives to prevent rust, and in oils, in the tanning process of shoes, cement, radiator fluid, many metals as a hardening agent, costume jewelry, watch bands, and generally in all metals which are not stainless steel as an alloy. Furthermore, coins carried in plaintiff’s pockets have caused the rash to appear, as did the metal nose bridge on his eyeglasses.
The testimony preponderates that upon exertion of any nature, or during the hot summer months, or anything that makes plaintiff hot, plaintiff perspires thereby aggravating the condition. Contact with cement and chromate (even those substances with the slightest traces of chromate) causes it to become inflamed. Furthermore, Dr. Hamilton was suspicious of nickel aggravating the dermatitis.
*517 Plaintiff testified as to the effects of the rash when it becomes aggravated and inflamed as follows: He has awakened at night-time to find his body bleeding where he has been scratching the rash; it is irritating and annoying while working; chrome is irritating to his arms; although he is presently working with an insurance company he has a flare-up about every week during the summer; and it is uncomfortable to work when the rash is aggravated. Dr. Hamilton testified that when plaintiff had a flare-up he just “has to scratch it”; it is inconvenient to do anything else when you have to “scratch” to a great extent; it is irritating to the point where it requires scratching and the scratching causes discomfort, and he can’t work as long as he is uncomfortable. Dr. Henington testified that it was not particularly painful in the sense that it would be excruciatingly painful, but it would be uncomfortable and itch, ooze, and stick to plaintiff’s clothes; it might be “slightly” painful but not enough to prevent him from working. He testified that if plaintiff perspired the salt in the perspiration would aggravate the dermatitis and plaintiff would be irritated by it. He further testified that if plaintiff had a low threshold for pain then a severe flare-up could cause plaintiff to be in pain; that plaintiff might have some pain with a flareup ; it could be said that he would be working in some pain; and that he could work during a flare-up but it would be uncomfortable.
Prior to working for defendant, plaintiff drove a moving van and performed duties attendant therewith; prior to that he worked in a factory in the manufacture of knitting machines where he operated a drill press; and in military service he was classified as a truck driver and assigned to the motor pool section.
The lower court found that plaintiff’s principle occupation was that of a truck driver; that the driving of a “concrete mixer truck” and duties involved did not constitute a specialized type of employment; and that as of May, 1958, plaintiff could drive a truck provided he did not come into contact with cement. or chromates. The court also found that “disabling pain” was not involved but “irritation and discomfort” and that if this were held to produce disability that there should be a showing that it produced inability to work which had not been shown and compensation for total and permanent disability was denied.
 In Cummings v. Albert, La.App., 86 So.2d 727, 729, it was stated that:
“ ‘Our compensation law has never required that a man be completely helpless before he can be adjudged totally and permanently disabled. The criterion is whether he can go back to the same job or to a job similar to what he was doing before. * * * It is well established in our jurisprudence that an employee whose injuries prevent him from performing his customary and usual duties without suffering pain, hardship and discomfort is totally disabled within the meaning of the compensation act.’
“ * * * where an employee due to the accidental injury is unable to perform substantially the duties formerly performed by him during the employment in which injured, he is totally disabled, despite his ability to earn a living doing other and lighter or less laborious, or less (or more) skilled duties.” See cases cited therein, and Michel v. Maryland Casualty Company, La.App., 81 So.2d 36, 40.
A workman is totally and permanently disabled when he cannot, on account of his injuries, return to work in which he was engaged at the time of his injuries, Bailey v. Maryland Casualty Co., La.App., 34 So. 2d 354. Furthermore, where an unskilled laborer lost an eye and was not able to perform his work as an oiler in a rice mill due to increased hazards caused by such loss it was held that the law does not require an injured or disabled employee to perform a different type of job, but pro *518 vides for total and permanent if the injured party is unable to substantially perform work of the same reasonable character even though there were many other unskilled jobs in the rice mill which claimant could have adequately performed in his condition and for which he would have received the same wages. Trahan v. Louisiana State Rice Milling Company, La.App., 100 So.2d 914. And where a worker, common laborer or skilled, could not perform substantial duties of his former occupation he was totally and permanently disabled for workmen’s compensation purposes. McGee v. Reimers-Schneider Co., La.App., 102 So.2d 566, writs denied.
“Time and again the Supreme Court [of Louisiana] has been urged to apply a test for common laborer different from that used for skilled workers. The Supreme Court, however, has continued to make no distinction, although it does seem that more consideration is now being given to the ability of the injured employee to compete in the common labor market.” See Dillon v. Lloyd’s of London, D.C., 178 F.Supp. 164 and cases there cited.
Thus the contention that plaintiff is a common laborer and is able to drive other trucks and therefore is not disabled is without merit. Although the doctors testified to a list of trucks and work driving trucks that plaintiff could perform the fact of the matter is that their testimony also indicates that he should avoid contact with cement and chromates. Thus he cannot drive a cement truck. As to other trucks, although he is physically strong and capable of driving, nevertheless if he perspires or comes into contact with chromates he will have a reoccurrence. It is inconceivable to us that he can drive heavy trucks (the job defendant contends he usually does) without perspiring or coming into contact with chro-mates. Physical exertion, heat, etc. cause him to perspire. Certainly this situation will be encountered every day. Furthermore, it is common knowledge that in our modern society chromates are used extensively in the construction of vehicles and consequently plaintiff will be in daily contact with chromates. The ideal condition would be to avoid perspiring, cement and chromates. It may be relatively easy to avoid cement. However, to avoid perspiring he would have to avoid exertion, and heat. This could be accomplished by plaintiff driving an air-conditioned truck. To avoid chromates the metal interior of his truck would have to be removed. Thus plaintiff is left with finding a job with these ideal conditions which we consider to be highly improbable, and therefore his ability to find a job is substantially lessened. Industry is not looking for men who are only able to work under ideal conditions for there are many who, although able to do a strong man’s work, are unemployed and seeking to do an honest day’s labor.
It is contended that plaintiff does not suffer pain and that his condition is therefore not disabling. Defendant’s own specialist, Dr. I-Ienington, testified that it was not particularly painful in the sense that it would be excruciating and that it would not be painful enough to prevent him from working. We agree that it would be painful (defined as “distressed or suffering”, in “The American Illustrated Medical Dictionary”, 22nd Ed. and “a distressing feeling due to disease, bodily injury, or organic disorders,” in “Webster’s New Collegiate Dictionary”, 2d Ed.) but however must disagree with the medical testimony that it would not be painful enough to prevent him from working. The realm of determining whether or not the pain is disabling within the contemplation of the compensation laws is basically one of law and not medicine, and properly determined by the courts considering, of course, the medical testimony as one of many factors employed in making the legal determination. See Milligan v. American Employers Ins. Co., La.App., 124 So.2d 614.
The rule as to pain is the determination of whether or not work of substantially the same nature causes pain. And *519 the pain need not be agonizing, although it should be substantial, depending, of course, on the circumstances of each case. See Reed v. Calcasieu Paper Co., 233 La. 747, 98 So.2d 175. Rather, disability as a result of pain, means that although one can work he does so only in pain and this is what the compensation law does not require. Moreover, we do not believe that the intent of the compensation law and jurisprudence requires a denial of total and permanent disability, but rather it demands an award for total and permanent disability in this case.
Moreover, it has been held that one is disabled when in performing his work the pain and discomfort is increasingly, aggravated, Yarborough v. Great American Indemnity Co., La.App., 159 So. 438 (total and permanent allowed); total and permanent allowed where pain, disability and discomfort present, Clifton v. Glassell-Taylor Co., La.App., 19 So.2d 590; pain, hardship and discomfort, Stansbury v. National Auto & Cas. Ins. Co., La.App., 52 So.2d 300; Johnson v. Cabot Carbon Company, Inc., La.App., 84 So.2d 639; Reed v. Calcasieu Paper Co., La.App., 80 So.2d 588, and 233 La. 747, 98 So.2d 175, affirming Court of Appeal; without any unusual difficulty or pain, Porter v. New Amsterdam Casualty Co., La.App., 99 So.2d 478; not required to work in pain or when it would not only militate against his own health and safety but possibly that of his fellow employees, Emilien v. National Gypsum Co., La.App., 109 So.2d 106, certiorari denied; and more recently in Bonin v. Sam Carline, Inc., La.App., 117 So.2d 312, 315, it was stated that:
“The jurisprudence in our State recognizes that the compensation laws do not require one to perform his customary and usual duties while suffering from substantial pain or discomfort. Although the petitioner, in the present case, may well be able to perform his same duties, he is not required, under the compensation act, to perform such duties under pain or discomfort, or where his condition would result in increased hazards to himself and his fellow employees.” (Emphasis added.)
From these authorities it is apparent that pain alone is not the magic word, rather discomfort and hazard to fellow employees may also place plaintiff'in the category of “disabled to perform substantially the same or similar work”. And the testimony is that he has pain (Dr. Henington) and discomfort (Dr. Hamilton). Moreover, it would be an incongruous situation to have plaintiff driving a truck and scratching his rash at the same time. If plaintiff worked under these conditions the danger to life and limb of his co-workers and third persons is readily apparent. For example, if the irresistible urge to scratch occurs while he is driving a heavy truck, he will undoubtedly be preoccupied with his itching and scratching rather than with traffic conditions and thereby create a danger to others.
Defendant contends that plaintiff is not disabled since he is “running debits” for an insurance company making a higher wage. We find no merit in this contention for one may be totally disabled despite his ability to earn a living doing other and lighter or less laborious, or less (or more) skilled duties. See Michel v. Maryland Casualty Co., supra. The fact that plaintiff is earning a greater wage (Jones v. Employer’s Mutual Liability Ins. Co. of Wis., La.App., 114 So.2d 602), or wages equal to or in excess of wage at the time of accident, (Strother v. Standard Acc. Ins. Co., La.App., 63 So.2d 484, and cases there cited); or equal or better wages and even from the same employer in a higher job classification, (McAlister v. Liberty Mut. Ins. Co., La.App., 87 So.2d 354, writs denied) ; or in a higher position in another shop, (McKenzie v. Standard Motor Car Co., La.App., 15 So.2d 115, writs refused) ; or has obtained a job in a clerical capacity at higher wages (Lala v. American Sugar Refining Co., La.App., 38 So.2d 415, writs *520 denied); is of no moment and a common laborer, totally and permanently disabled, earning a higher wage performing different work will not be deprived of his right to recover compensation from the employer he was working for at the time of his injury, Brown v. Continental Oil Co., La.App., 22 So.2d 758.
We have examined several cases pertaining to dermatitis among which were the following. In Bernard v. City of Lafayette, 15 La.App. 572, 132 So. 395, on rehearing from a judgment at La.App., 126 So. 584, the court affirmed a judgment of compensation of 65% of weekly wages during the term of disability not to exceed 284 weeks plus medical. In the original opinion (126 So. at page 586) it was said “The fact is eczema is an • itching disease producing in the sufferer an uncontrollable desire to scratch himself. Plaintiff had scratches all over his body.” In the case at bar plaintiff’s dermatitis, a chromate eczema, which is extremely itchy and from plaintiff’s testimony that he is awakened at night bleeding where he has scratched and that it is the type rash “* * * you would dig into it * * * and claw right into it with fingers * * * ” it is obvious that the urge to scratch is likewise uncontrollable here. (“ * * * When Ah itchez, Ah scratchez!”, said the young belle of old Natchez in “I’m a Stranger Here Myself Reqrtiem” by Ogden Nash.)
In Ware v. Engineering Const. Co., 17 La.App. 600, 135 So. 248, 249, plaintiff claimed to have skin disease caused from working in fresh cement, dipping and pouring it into forms, but the court found that “ * * * jt is more reasonable to assume that the dermatitis plaintiff is suffering from was produced by contact of the skin with some foreign fungi, and that it has no relation to the lime burns * * * he suffered.” In the case at bar the medical testimony is to the effect that the cement did cause the dermatitis and there is no question but that it was the result of an accident occurring during.the course and scope of his employment. In Dill v. Ace Wire Line Corp. Drilling Co., La.App., 193 So. 409, the evidence also failed to show that the dermatitis resulted from an injury while in employment.
In Picquet v. Toye Bros. Yellow Cab Co., La.App., 77 So.2d 569, writs denied, plaintiff sought to recover, under LSA-R.S. 23 :- 1021 et seq., as amended by Act No. 532 of 1952 allowing compensation for disability due to specifically designated occupational diseases, for dermatosis. Compensation for occupational disease, under the act was denied as it had been caused by a preexisting condition of his skin. Olivier v. Liberty Mutual Insurance, La.App., 125 So.2d 179, is a recent case in which compensation as for an occupational disease was sought. Claimant contracted dermatitis in the course and scope of employment in connection with cement and plaster work, was cured but unable to resume work due to the threat of reactivation. Total and permanent compensation as for an occupational disease (LSA-R.S. 23:1031.1, subds. A, B(5)) was denied. Judge Re-gan authored the majority opinion in the Olivier case and made reference to his dissent in the Picquet case. Nevertheless, both cases are inapposite for the reason that recovery was sought under the "occupational disease” acts and in the Picquet case plaintiff was shown to have a preexisting condition and in the Olivier case plaintiff was completely cured, whereas in the case at bar it has not been shown that plaintiff had a pre-existing skin infirmity nor has the plaintiff been cured of his condition as evidenced by the medical testimony and in particular that of Dr. Hamilton who said that on the morning of the trial plaintiff reacted positively to a chro-mate patch, and Dr. Jolly’s report that absolute avoidance of contact with chromates is required to cure plaintiff and that such avoidance is almost impossible.
In Arkansas Nat. Bank of Hot Springs v. Colbert, 209 Ark. 1070, 193 S.W.2d 806, a case arising in our sister state of Arkansas, where nickel coin and carbon paper caused dermatitis, to occur, a bank teller *521 was found to be totally and permanently disabled under the “occupational disease” act. Also in Lamar Bath-House v. McCloud, 209 Ark. 1078, 193 S.W.2d 809, compensation was allowed to a masseur who could no longer work even moderately as a masseur since such work caused a return of irritation.
In view of the foregoing we find that plaintiff was totally and permanently disabled within the intent of the compensation act. Furthermore, defendant is protected in that if plaintiff is no longer disabled it is allowed to judicially determine same and relieve itself of further liability.
Defendant has answered the appeal contending that the trial judge erred in assessing penalties and attorney’s fees for failure to pay medical expenses for the services of the attending physician, Dr. Hamilton. The trial judge found that:
" * * * the record reveals that defendants have not paid for the services rendered by plaintiff’s attending physician, Dr. Hamilton, and they have not in any manner contested their liability in this respect. The total charge for these services is $523.65. Plaintiff is entitled to judgment for this amount plus legal interest thereon from its due date. Additionally, plaintiff is entitled to an award of penalty at the statutory rate of 12% and an attorney’s fee which is fixed in the sum of $200. * * * ”
Defendant has contested the assessment of these penalties on appeal. The record does not disclose that defendant knew that this bill had not been paid. Furthermore, defendant had previously paid one medical bill. On the trial counsel for defendant asked Dr. Hamilton whether or not he hasdi received any of that payment and he answered negatively. Subsequent to judgment below defendant paid this bill and admits it owed the bill. In oral argument: counsel for plaintiff stated that he did not believe that this was at issue at the time of trial and had not introduced certain evidence that he had which allegedly would show that defendant had notice that this bill had not been paid. In view of the fact that defendant made no defense, nor contested their liability for this amount, and the fact that plaintiff offered no evidence (allegedly having same) we feel that this case should be remanded insofar as the question of penalties and attorney’s fees for failure to pay same is concerned to consider evidence on the merits of the contentions of plaintiff and defendant as to notice, demand, etc.
For the foregoing reasons the judgment appealed from is annulled and set aside insofar as it denied compensation for total and permanent disability and judgment entered in favor of plaintiff and against defendant for total and permanent disability allowing 65% of wages per week, not in excess of $35, during the period of disability, not to exceed 400 weeks, less credit for payments previously paid; insofar as the judgment awarded penalties and attorney’s fees for failure to pay the medical expenses in the amount of $523.65 for the services of Dr. Hamilton the case is remanded for proceedings in accordance with the views hereinabove expressed and in accordance with law. Defendant to pay costs of this appeal.
Reversed in part, remanded in part.
On Application for Rehearing.
En Banc. Rehearing denied.