LUTHER E. HALL, Judge pro tem.
Plaintiff was injured in an accident on May 9, 1958 while employed by defendant as a construction laborer. He filed suit for Workmen’s Compensation on December 5, 1958 and on March 4, 1959 by stipulation of counsel for both parties judgment was rendered in plaintiff’s favor awarding him compensation at the maximum rate for the duration of his disability but not to exceed 400 weeks, subject to credit for Workmen’s Compensation theretofore paid.
On October 9, 1959 the defendant filed a petition to review and modify the judgment under the provisions of LSA-R.S. 23:1331 alleging that plaintiff had fully recovered and was able to resume his previous occupation.
After a hearing on the merits of the petition to review, the trial judge rendered judgment relieving defendant from the payment of further compensation under the judgment of March 4, 1959. Plaintiff has appealed from that judgment.
Plaintiff’s injuries consisted of a severe contusion to the left foot and ankle with a fracture of the distal third of the fibula. Plaintiff had been working as a gasoline service station attendant since April of 1959, and the sole question presented here is whether he has sufficiently recovered from his injuries to resume the same type of laborious construction work that he had been performing for his employer prior to the accident.
The trial below was commenced on January 4, 1960.
Drs. M. D. Paine, George C. Battalora Jr., and James L. Lenoir testified on behalf of the defendant.
Dr. Paine, a general surgeon, treated plaintiff immediately after the accident of May 9, 1958 and discharged him on November 18, 1958 with a 10% functional disability of the foot which he expected would improve to 5'%. He testified that as of the date of his discharge plaintiff was able to return to work as a construction laborer although he would have trouble with his ankle at first. Dr. Paine had not seen plaintiff since November 18, 1958.
Dr. Battalora Jr., an orthopedic surgeon, saw plaintiff once and that was on September 9, 1958. He testified that at that time plaintiff had a 10% permanent disability of the ankle, that he could return to work as a construction worker, but that he would not advise him to go back to climbing.
At the conclusion of the testimony of these two doctors, defendant (on account of the fact that neither of them had seen plaintiff since the fall of 1958 some fourteen or fifteen months prior to the trial) caused several rolls of motion pictures to be shown in their presence, and then attempted to have them bring their medical opinions up to date on the basis of what they saw in the films. These films taken in May and September of 1959 showed plaintiff tending to his duties at the service station. It may be well to state here that plaintiff never denied but testified fully as to such employment.
*725 After viewing the films neither doctor changed his former opinion but both testified that in some of the scenes plaintiff seemed to have a slight limp, although neither could be certain of it.
The next witness for the defendant was Dr. Lenoir, an orthopedic surgeon. Dr. Lenoir testified that he examined plaintiff on December 4, 1958 and again on June 26, 1959. On his first examination he found that plaintiff had a 10% disability of the foot which he felt would be temporary. After the examination of June 26, 1959 Dr. Lenoir found plaintiff considerably improved and that the disability which he had previously found had disappeared. He felt that plaintiff had reached maximum recovery and that he could do any kind of work he wanted to do.
Defendant’s case was concluded with Dr. Lenoir’s testimony.
Plaintiff’s first witness was Dr. Irvin ‘Cahen, an orthopedic surgeon. Dr. Cahen originally examined plaintiff on January 6, 1959 and treated him as a patient from March 6, 1959 until April 15, 1959 in an ■effort to reduce the swelling present in plaintiff’s ankle. He stopped treatment as there was little or no improvement. Dr. Cahen testified that as of April 15, 1959 plaintiff was unable to go back to work as a construction laborer.
Dr. Blaise Salatich, an orthopedic surgeon, next testified on behalf of plaintiff. He treated plaintiff from December 22, 1958 to March 3, 1959 and from June 11 to September 21, 1959. It was his opinion that plaintiff could not do the work of a construction laborer, as of September 1959.
The final medical testimony on behalf of plaintiff was given by Dr. George C. Bat-talora Sr., an orthopedic surgeon who had been employed by defendant to examine the plaintiff but was not called to testify in defendant’s behalf.
Dr. Battalora Sr., originally examined plaintiff on March 27, 1959 and estimated that plaintiff had a 20% permanent disability referable to the left foot. He felt that plaintiff might do some type of work but no work requiring climbing, and that if he did extensive walking he would have pain. On cross-examination when told of plaintiff’s work at the service station he stated that plaintiff could have improved but could not tell to what extent unless he re-examined him.
The trial was then recessed until March 15, 1960 to permit this re-examination.
Dr. Battalora Sr., after a complete reexamination of plaintiff’s foot, testified that there had been some improvement since his previous examination and thought that plaintiff should be able to resume his previous type of occupation as a construction laborer. He then estimated the disability to be somewhere between 10 and 20% permanent loss of use of the foot. He acknowledged that the loss of use could be 20% and that it would be permanent. Dr. Battalora Sr., further acknowledged that plaintiff’s ankle was tender at the time of his re-examination.
Plaintiff himself testified that he did not return to work when Dr. Paine discharged him on November 18, 1958 because his foot was still swollen and he was still using crutches. He testified that in April 1959 he went to work in a service station; that the work required from four to six hours of actual work per day and the remainder of the time he could sit around or just stand up; that he could not work at a service station where he would have to keep moving all the time. He stated that when he woke up in the morning his foot was stiff and he could hardly walk; that later in the day his foot would begin to swell and when he came home at night he would soak his foot and sleep with his foot on a pillow. He further testified that he could not go back to construction work, that he walked with pain in his foot at the present time. He said that in construction work “you go steady all day long” and he could not dd it.
*726 Plaintiff’s testimony was corroborated by his wife.
The consent judgment of March 4, 1959 amounted to an admission by defendant that plaintiff was totally disabled as of that date. Consequently defendant bore the burden of proving by a preponderance of the evidence that plaintiff was physically able to resume his occupation as a construction laborer. From the testimony adduced we do not believe defendant has discharged that burden.
The only medical testimony adduced as to his condition on the date of the trial is that of Dr. Battalora Sr. who fixed plaintiff’s percentage disability as between 10 and 20% permanent loss of use of the left foot but who acknowledged that it could be 20%. The injured workman is entitled to the benefit of the doubt.
The fact that plaintiff could with some discomfort do the work of a service station attendant is by no means proof that he could resume the heavy work of a construction laborer.
This case is strikingly similar in all respects to the case of Emilien v. National Gypsum Company et al., La.App., 109 So.2d 106, decided by our predecessors on January 5, 1959 (certiorari denied April 27, 1959) wherein it was said:
“ * * * In order for plaintiff to procure laboring work similar to that in which he was engaged when injured he must be able to compete with able-bodied men in a competitive labor market. Plaintiff, who is afflicted with a permanent partial loss of use or function of his right foot amounting to 20%, as found by the trial court, is not able to compete with other laborers in loading boxcars with heavy gypsum boards for five or six days a week * * * ; consequently he is ‘disabled to do work of any reasonable character’ in conformity with the purpose and intent of the statute.”
For the foregoing reasons the judgment appealed from is reversed and defendant’s demands are dismissed; all costs in both courts to be paid by the defendant, Gervais F. Favrot Co., Inc.
Reversed.