JANVIER, Judge.
This is a compensation suit brought by the widow of Dennis Picquet who died on *282 April 28, 1958, almost exactly four months after an occurrence on December 30, 1957, which it is alleged was an accident and which it is also alleged caused his death, or in the alternative accelerated or activated a cancerous condition from which he had previously been suffering.
The defendants are the employer, American Marine Corporation and its insurer, Fidelity & Casualty Company of New York. The Board of Administrators of Charity Hospital of Louisiana at New Orleans intervened, claiming that, in the event of liability in defendants, it should recover $459.77 as the cost of services rendered to the employee.
The defendants maintain that the occurrence referred to did not constitute an accident, but that, even if it did, the death of the plaintiff was in no way caused by that occurrence and that the progress of the spreading cancerous condition was not activated thereby.
There was judgment dismissing the suit. Plaintiff has appealed.
The facts surrounding the so-called accident make it doubtful whether, even under the very liberal interpretation of the word “accident” which has been accorded it by our Courts in compensation cases, the occurrence could be actually termed an accident.
However, since we are convinced that the occurrence neither caused the eventual death of the employee, nor activated or accelerated the progressive effect of the cancerous condition from which he had been for sometime suffering, we shall assume that there was an accident and shall, therefore, discuss the question of whether that accident had any causal connection with the ultimate death four months later.
The employee, Dennis Picquet, had an excellent work record and, so far as the record shows, had little if any idea that at the time of the accident' he had for sometime been suffering from a cancerous condition which had originated in the lung and, by a process called metastasis, had spread to his spinal column and formed a large malignant mass which attached itself at the fourth interspace at the left side of the lumbar region.
On December 30, 1957, while he, together with three other employees, was lifting a tank which weighed 130 pounds, he complained of a pain in his lower back region. It is not shown that he slipped or fell or that anything struck him in that area. He merely suffered from a pain in his back. He asked a fellow-employee to rub his back, and it may be noted here that the employee, Cortell Travis, went to the locker of Picquet and found a can of Alcorub which Picquet had in his locker and used it to rub Picquet’s back. We direct attention to this because it indicates to some slight extent that Picquet had had similar pains in his back and had this Alcorub on hand for that reason.
After that day Picquet never returned to work, but for about ten days was treated by physicians who ultimately recommended that X-ray photographs be taken of that portion of his back. He was referred to Dr. Harold Karr, a neurosurgeon, and a myelogram was made. As a result of the photographs and the myelogram there was discovered “a mass lying” at that part of his back. An immediate operation was recommended and this was performed on February 17, 1958. By what is known as a laminectomy, there was removed an enlarged mass which, on pathological examination, proved to be malignant. It was determined, and there was no opinion to the contrary, that this malignancy had not originated at that point, but had been spread to that point by metastasis which had originated in the lung. This was determined by medical experts who eliminated the other possible areas in which the malignancy might have originated and finally concluded that it had definitely originated in the lung.
On April 8, 1958, Picquet was released from the Flint-Goodridge Hospital where *283 the operation had been performed and he went to his home. However, ten days later it was found imperative that he be again hospitalized. He was taken to the Charity Hospital where he died on April 28, 1958.
Assuming then that there was an accident, the sole question is whether or not his pre-existing cancerous condition was illuminated or accelerated by the accident. There is an unusually voluminous tran■script of testimony of transcendent medical experts, all of whom are certain that the-final cause of death was the lung cancer and all but one of whom are certain that the occurrence had nothing whatever to do with the death four months later.
The one physician who believed that the ■occurrence and the ensuing operation had accelerated the progress of the previously existing cancer was not a surgeon, and he had not actually seen or examined Picquet but based his conclusion on an examination of the various medical records which were exhibited to him. He founded his opinion on either of two premises neither of which was found to have actually existed. He said that the occurrence might have accelerated the progress of the cancer because the occurrence might have resulted from hemorrhage or from a fracture of some part of the spine. However, it was definitely shown that there had been no fracture of the spine.
As we have said, the record is voluminous, but we do not see that any useful purpose would be served by a discussion in detail of the medical evidence.
Although the physician to whom we have referred is unquestionably an expert whose views and opinion are entitled to great respect, by a tremendous preponderous the evidence of those who believed that the occurrence had no causal connection with the ultimate death overwhelms the opinion of this one physician who believed that there was a possibility that there was causal connection between the occurrence and the death.
Under the circumstances, all that plaintiff can rely upon is the fact that, until the time of the occurrence, her husband was apparently an able-bodied man with no knowledge of his condition and with an excellent work record, and that after that occurrence his condition progressively deteriorated with the ultimate fatal result. It is true that, under such circumstances, it has often been said that there arises a presumption of causal connection, but that presumption is, of course, subject to rebuttal, and where as here the evidence, as we believe it does, completely eliminates the probability, if not the possibility, of causal connection, no recovery should be permitted.
The District Judge felt as we do and we think that he was correct. The judgment appealed from is affirmed.
Affirmed.