AYRES, Judge.
This is an action for workmen’s compensation. Plaintiff seeks to recover of his former employer, J. Truly Fuqua, and his employer’s compensation insurer compensation benefits as for total and permanent disability as the result of accidental injuries allegedly sustained by him September 5, 1957, while performing the duties of his employment as a common laborer in connection with his employer’s logging operations.
The defense is a denial that plaintiff sustained accidental injuries while in the ■employ of the defendant Fuqua; that, if indeed plaintiff suffered any disability, such was due entirely and exclusively to natural causes or to causes in no manner connected with his employment; and, in the alternative and only should it be held that plaintiff sustained any disability while engaged ■in his employment with the defendant, he has fully and completely recovered.
In analyzing the testimony, the trial ■court reached the conclusion that an accident occurred as alleged, but there was no causal connection or relationship between the accident and plaintiff’s alleged disability. From an adverse judgment, plaintiff appealed.
The issues presented on this appeal, as before the trial court, are purely factual in character and relate solely to the occurrence of an accident and its relationship to the disability allegedly sustained by plaintiff.
The circumstances relating to the occurrence of the accident, as contended by ■plaintiff, may be briefly stated. Plaintiff was assisting in the loading of billets on a truck. From the testimony, we under■stand “billets” are short logs, which are loaded crosswise on trucks for transportation. The loading is accomplished by means of a winch truck equipped with a crane, cables, and hooks. Through the use of these instrumentalities and power provided by the motor of the truck, the logs are lifted and placed on the trucks. In carrying out this process, plaintiff was standing on a truck as it was being loaded, assisting in the placement of the billets. When a billet approximately seven feet long and fourteen inches in diameter, with an estimated weight of three hundred pounds, was hoisted above the truck, for some unknown cause, the billet swung over and across the truck. Plaintiff endeavored to minimize and/or ward off the blow by catching the billet with his hands, but was unable to stop or fully check its swing and was knocked off the truck. On falling to the ground, plaintiff landed on his feet and buttocks.
In resolving the. issues presented for determination, of primary importance is the question of the burden of proof. The rule is well established, and often stated— citation of authority need not be made— that the burden is upon a claimant in a compensation case to establish his claim, to a reasonable certainty, by a preponderance of evidence; that the establishment of such a claim only to the extent and degree of probability is insufficient; and that, where the issues relate to the occurrence of an accident and its relationship to an alleged disability, the burden is upon plaintiff to establish not only the occurrence of the accident but also a causal relationship between the accident and the claimed disability.
With these principles in mind, after a painstaking study and review of a voluminous record, including the testimony of nine medical experts, we find ourselves in disagreement with the views of the trial court as to the occurrence of the accident, but in full accord with its conclusion that no causal connection was established between any alleged accident occurring while plaintiff was employed by the defendant *26 and the disability subsequently claimed by him. Notwithstanding our reluctance to disagree with the trial court upon its findings of fact, we are unable to conclude, from the unsatisfactory and unconvincing character of the evidence relied upon, that an accident whereby plaintiff claims to have sustained injuries actually occurred while he was in defendant’s employ.
While neither a detailed résumé nor discussion of evidence is deemed either nec-sary or important, some of the salient facts which led us to the aforesaid conclusion will be pointed out. Plaintiff relied upon his own testimony and that of two fellow employees to establish that an accident occurred. Plaintiff alleges and insists he was injured on or about September S, 1957, and, while a precise date is not always of material importance, neither he nor his witnesses could be positive when the accident occurred. His own vagueness was only exceeded by that of his fellow employees who could give no further information, or be more positive, than that the accident occurred near the time alleged. It may be here pointed out, from defendant’s testimony and his payroll records, it is definitely established that plaintiff was not, at any time during September, 1957, in the employ of the defendant. This evidence did establish, however, that plaintiff worked two weeks in August, the weeks ending with August 23 and August 30, 1957, and during a portion of the week ending October 11, 1957.
Plaintiff insists that on the day following the accident, he returned for work but, due to his suffering, was unable to continue therewith, whereupon he returned home where he was confined for a few days. He claims, then, to have resumed his work and to have continually worked thereafter in two-day periods, during intervals of every four or five days, until he could no longer work and sought medical attention. In contradiction to the above, it has already been pointed out that plaintiff was not in defendant’s employ at any time during September, 1957; nor was his work spasmodic, as he testified.
No plausible reason has been advanced for plaintiff’s failure to promptly notify his employer of his alleged accidental injuries. According to his own testimony, there was no delayed manifestation or onset of the effects of the accident or of his disability. Despite Fuqua’s almost daily presence on the job, plaintiff does not even claim to have given him any notice whatsoever of any purported accident or of accidental injuries. Defendant’s first information came indirectly through a telephone call from a drug store November 9, 1957, making inquiry as to the authority to charge, to defendant, medicines prescribed for plaintiff. Under the circumstances, it could be only concluded that plaintiff’s failure to make some complaint to his employer is inconsistent with reason. Justification for this failure has not been attempted.
Nor is the testimony of J. L. Morris of such convincing character to establish that notice of the alleged accident was given defendant. The trial court held, and we also conclude, that for the accident to have happened as testified by plaintiff, Morris, and Laborde, it must necessarily have occurred during August, 1957. Morris would have it appear that he reported the accident within a few days and, at most, within a week following its occurrence. In recounting this report, Morris particularly recalled that it was made on a very cold day while he, Fuqua and his other employees were warming beside a fire built in the woods where they were working. That August and September, in this locality, are two of the hottest months of the summer season is a matter of common knowledge. A common expression alluding to the utter impossibility of the occurrence of an event is “Not until a cold day in August.” It would be indeed a strange and striking phenomenon for the weather in this locality to be so cold in either August or September, or even October, to require woodsmen to build a fire for warmth. If, however, it *27 should be conceded that plaintiff and his two witnesses were mistaken as to the date of his accidental injuries by as much as two or three months, then, according to defendant’s payroll records, the correctness of which we are convinced, plaintiff would have sustained his accidental injuries after his employment with the defendant had ceased.
Moreover, no doubt exists as to why plaintiff’s services were dispensed with by defendant. Defendant had given positive instructions that certain high-grade timber was not to be cut. On ascertaining that these instructions had been violated by plaintiff, plaintiff was warned by defendant, who suggested, if plaintiff again committed such violations, that he cease work forthwith and leave the woods. On again returning to the woods, defendant found his instructions had again been disregarded and violated, and that plaintiff had already left the job.
For the above reasons and for others which might be pointed out, the conclusion is inescapable that the testimony of plaintiff and his witnesses, as to the occurrence of the accident, is not only vague and indefinite but, in many respects, incredible. It fails to convince to that degree of certainty upon which a judgment may be predicated.
Equally indefinite was the witnesses’ testimony as to plaintiff’s complaints of injury and suffering.
The conclusion as to the nonoccurrence of the accident, in which plaintiff claimed to have sustained injuries, would normally dispense with any necessity for the consideration or mention of such injuries. However, since the court, in holding no causal relationship was shown between the accident and plaintiff’s alleged disability, is earnestly charged with the commission of manifest error, its conclusions on this issue, and under the particular facts of this case, merit and warrant the consideration of this court, and the parties are entitled to our views.
The injuries allegedly sustained by plaintiff may be considered in two classifications : (1) acute orchiepididymitis and (2) a herniated disc at the level of the fifth lumbar and the fifth sacralvertebrae. We, nevertheless, do not deem it necessary to enter into a detailed or prolonged discussion, particularly of the testimony of the medical experts, eight of whom appeared and testified on behalf of the plaintiff and one on behalf of the defendant. It suffices, we think, to say that the findings of the trial court are abundantly supported by the evidence and that the matter was aptly disposed of in a written opinion wherein it was stated:
“ * * * it is noted that plaintiff first sought medical attention on November 5, 1957, two months or more after the accident, at which time he complained to Dr. Edwards of pain in the right inguinal area and scrotum, no mention being made of any back trouble. Dr. Edwards diagnosed the trouble as ‘right orchiepididymitis, acute’, and on the last examination on November 18th this condition was much improved. It was not until plaintiff’s visit to Dr. Ryder on December 2nd, 1957, that any complaint of back pain was made.
“According to the medical evidence, epididymitis is usually brought on by bacterial infection. It can be caused by trauma in the form of a hard direct blow to the scrotum, however, in such cases it is expected that severe pain and disability would follow within 24 to 48 hours.
“On the other hand, there is the suggestion that very often in cases of disc pathology the pain is referred to the abdomen and scrotum. Apparently, this is not of importance in this case as plaintiff’s complaints of scrotal pains were definitely found to be attributable to a condition in that area.
“While it must be concluded that plaintiff, for a period beginning at *28 least by November 5, 1957, and continuing until after the trial of this case, has been suffering some form or forms of disability, the evidence forces the conclusion that plaintiff has not sustained the burden resting upon him to establish a causal connection between any injury he may have sustained while in Fuqua’s employment and the disability. This writer is able to rationalize the matter only by concluding that plaintiff’s back trouble is related to the one or more accidents admittedly sustained after he first sought medical assistance for his condition of epididymitis, and the time of which has not been established with any degree of certainty. This conclusion is fortified by the testimony of the lay witnesses produced by plaintiff, all of whom fix the period of disability as beginning at a time after plaintiff’s employment with Mr. Fuqua had certainly ended.”
In this connection, attention is directed to the testimony of Dr. Robert P. Foster of Alexandria, who examined plaintiff April 1, 1958, who, testifying under deposition as plaintiff’s witness, said, in referring to the history of plaintiff’s ailments as related by him, that plaintiff made the statement that a day prior to the examination, while assisting his son in moving and lifting a plow, in order to attach it to a tractor, he experienced a “pop” in his back with acute pain radiating into both hips and into both legs. The pain was said to have become aggravated by bending, lying on his stomach, or coughing, and that relief was obtained only by lying motionless on his back.
To the facts disclosed by this record, the court properly found applicable the rule of law referred to in Mitchell v. Brog-don, La.App., 106 So.2d 531, 533, wherein it was stated:
“The jurisprudence is well settled that a plaintiff in a workmen’s compensation case carries the burden of proof as in other civil cases and is required to establish his claim to a legal certainty by a reasonable preponderance of the evidence; that the establishment of such a claim only to the extent of possibility or even probability is insufficient; and that speculation, conjecture, mere possibility and even unsupported probability are not sufficient to support a judgment.”
and concluded that plaintiff’s orchiepididy-mitis was not established as traumatic in, origin and that his back injury was not produced by an accident occurring while-plaintiff was in defendant’s employ. The-preponderance of the evidence supports this, conclusion.
For the aforesaid reasons, the judgment of the trial court, rejecting plaintiff’s demands, is, in our opinion, correct and, accordingly, it is hereby affirmed at his cost.
Affirmed.