FRUGÉ, Judge.
This is a workmen’s compensation suit which arose as a result of an alleged injury to plaintiff while plaintiff was employed by Western Construction Company, Inc. Defendant is the insurer of Western Construction Company, Inc. Plaintiff sued for total and permanent disability, medical expenses, legal interest, costs of the suit and penalties. The trial court dismissed the suit at plaintiff’s costs whereupon plaintiff applied for and was granted a rehearing on the ground that there was no award for medical expenses. On rehearing'the trial court awarded medical expenses of $30, with legal interest thereon, and costs but denied plaintiff’s other claims. The plaintiff has appealed from the judgment of the lower court on the original hearing and rehearing. Defendant has appealed from that portion of the judgment awarding plaintiff $30 and costs on the basis that it was never presented the bill representing that expense.
Plaintiff was employed by Western Construction Company, Inc. as a cement finisher. At the time of the accident, which occurred on the morning of December 11, 1958, he was standing in cement in knee boots doing the work required of him, when he struck his right boot against a jagged edge of re-enforcing steel. The steel punctured his boot and his right little toe. The punctured boot allowed cement to seep into it which caused irritation to the cut. He removed the boot and obtained another. He did not leave the job until quitting time at about eight or nine o’clock that night. That night, he testified, the toe was irritated and he noticed some swelling. He did not go back to work the next day nor did he see a doctor until December 20, 1958. The family doctor, Dr. Robertson, on that dáte, found his right foot swollen, with a soft spot tending to ulceration on the right small toe, and upon testing for sugar in the urine determined that it was positive whereupon he recommended hospitalization. Dr. Robertson did not see plaintiff again until December 29, 1958 when he was called in by Dr. Holcombe, Jr.
On December 22, 1958 plaintiff went to see his employer who took him to St. Patrick’s Hospital in Lake Charles, where he was examined by Dr. Holcombe, Jr., and hospitalized. This examination revealed that he had an infected corn on the dorsum of the little toe, that is, an ulceration of the little toe; that his right foot had become swollen and associated with this was cellu-litis and ascending lymphangitis of the right leg. Upon being hospitalized it was found that there was sugar in his urine and that he was a diabetic. Dr. Robertson was asked to treat the diabetes and Dr. Hoi- *616 icornbe, Jr. treated the infection. Plaintiff ■was again examined and it was found that he had a numbness in his right leg which was associated with the diabetic condition, hypertension and glomerulosclerosis which indicated a Kimmel-Steil-Wilson syndrome. Plaintiff was released from the hospital on January 5, 1959 when it was considered that 4he infection was completely controlled, but Dr. Holcombe, Jr. continued to see him until February 17, 1959 when he was discharged due to the fact that his infection and cut was completely healed at that time. After this date Dr. Holcombe, Jr. saw plaintiff when he complained of numbness in his right leg, but he was advised that control of his diabetic condition was the only thing that would be of help to him. Dr. Holcombe, Jr. testified that there was no evidence of cellulitis from January 5, 1959 to February 17, 1959.
Defendant paid plaintiff compensation for eleven weeks disability at the rate of $35 weekly for a total of $385 from December 12, 1958 to February 26, 1959 and medical payments of $481.84. Payments were discontinued February 26, 1959, on the basis of Dr. Holcombe’s statement that plaintiff was cured from that injury and was able to return to work. In a report by Dr. Holcombe, Jr. to defendant dated April 6, 1959, he stated that plaintiff was able to return to work on February 17, 1959 so far as the infection was concerned and that he was capable of doing the same kind of work as before.
On May 14, 1959 Dr. Buttross, a specialist in internal medicine, examined plaintiff and found that plaintiff had advanced diabetes mellitus, and advanced kidney disease (Kimmel-Steil-Wilson syndrome), hypertension (which was secondary to the kidney disease), exudates of the eyes which he stated were probably secondary to the diabetes and hypertension, and a numbness in his right lower leg.
On July 7, 1959 Dr. Lester, a specialist in internal medicine, examined plaintiff on behalf of the Social Security Office and found that his blood pressure was high; that there was sugar, albumen, white blood cells and many red blood cells in his urine which indicated diabetes and kidney involvement; and numbness in the lower right extremity, indicative of a peripheral neuropathy which is a complication of diabetes.
Dr. Anderson, also a specialist in internal medicine, examined plaintiff on March 17, 1960, on behalf of defendant and found his blood pressure high; numerous old scars on the eyes; diabetes mellitus with Kim-mel-Steil-Wilson complication and a diabetic neuropathy of the right leg.
Dr. Hart, an ophthalmologist, examined plaintiff on behalf of defendant on March 19, 1960 and found that he was industrially blind; and also found the typical changes of the oculary fundus that go along with advanced diabetes.
Returning to the testimony of Dr. Robertson momentarily we find that he had examined and treated plaintiff in July, 1958 for an infection of the left foot (not connected to injury to right foot which is the basis of this claim). At that time he had cellulitis of the left foot; and a negative urine analysis for sugar. He made no record of his findings as to blood pressure, but assumed that because he had no record that it was normal at that time. He further stated that plaintiff fully recovered from that infection.
Plaintiff alleged, among numerous other averments, in its original petition that:
“Said physicians have found that subsequent to this accident, petitioner has diabetes mellitus, which was aggravated by the trauma to and subsequent infection of petitioner’s lower extremity. They have found that because petitioner did not have difficulty with diabetic condition prior to this accident, this condition must have been a dormant or latent diabetes which has only come to light as- a result of its aggravation by this accident. They *617 have found that since this accident petitioner has a peripheral or diabetic neuropathy of his right leg, and also that since this accident, petitioner has a Kimmel-Steil-Wilson Syndrome. His condition has further been described as a cellulitis with lymphangitis of the right foot, and diabetic ulceration of the right little toe.
“Petitioner alleges that all of these conditions are disabling, and that they were all caused by this accident, either directly or as a result of aggravation of a pre-existing condition whether the pre-existing condition be diabetes or some other condition unknown to petitioner.”
Defendant has denied the above allegations and alleged that it was doubtful that plaintiff had sustained an injury and therefore there was no liability on its part and alternatively that if he was entitled to compensation, then it has paid adequate compensation to cover said disability since he was able to return to work with no disability from that injury prior to February 26, 1959. Defendant does not deny, but readily admits that at the time of trial that plaintiff was totally and permanently disabled, however, while deploring the hardship of plaintiff, it strenuously denies that the toe injury was the cause thereof and insists that the disability resulted from plaintiff’s long-standing diabetic condition and attendant complications which for years have been becoming steadily worse.
Due to the complexity of the medical questions involved herein and their resolution or amalgamation into a cogent medico-legal, or rather legal conclusion, an extensive analysis and discussion of the medical testimony adduced on the trial of this case is appropriate.
The question with which we are presented is whether or not the plaintiff has met the burden of proof required to establish that the injury and resulting infection have totally and permanently dis-abled him from the performance of the work that he customarily performed, that is, did plaintiff show a causal connection between the injury and the kidney disease, the diabetic neuropathy and the industrial blindness? We believe he has not done so.
The question of whether or not plaintiff sustained an injury to his right little toe may be resolved in the affirmative. Although no one on the job saw the cut, his actions bear out his testimony that he did sustain a cut. He worked a few minutes-after his boot was punctured, but complained to his co-worker that the cement was irritating his toe and went to the tool! shed where he obtained another boot and returned to work. We find that the infection resulted from an injury which occurred in the course of his employment.
In relation to the industrial blindness, Dr. Hart testified that the shortest known case of retinopathy of this severity is three years, but that it generally takes about ten to fifteen years of uncontrolled diabetes to produce this result; a moderate diabetes over many years could have caused this eye condition; that a person with diabetes-who underwent a severe stress could have his eyes affected thereby; however he was positive that plaintiff had this condition at least three years before; he further stated that it was possible for plaintiff to have had this eye condition five years before and still perform his work; and finally that although the loss of vision could occur overnight, the process could have been accelerated by infection. Dr. Holcombe testified that plaintiff told him of his complaints about his eyesight and that the condition of his eyes was concomitant of the diabetes.
All of the doctors testified as to the kidney disease or what is known as the Kim-mel-Steil-Wilson syndrome. There was general agreement that it is an intercapil-lary glomerulo nephrosclerosis or hardening of the blood -vessels surrounding the-functional units of the kidney. They testified that plaintiff exhibited the usual symptoms of the disease of hypertension *618 and glomerulosclerosis. Dr. Robertson attributed the kidney damage to high blood pressure, but did not attribute it to the infection, Dr. Hart testified that the kidneys were affected by the diabetes; that the syndrome could be detected by an examination of the eyes; and that the syndrome (Kimmel-Steil-Wilson) takes five to fifteen years to develop. Dr. Lester testified that it develops over the years and Dr. Buttross agreed with him, but further testified that it takes five years to develop. Dr. Anderson stated that the syndrome was a complication of diabetes and that it takes about five years of uncontrolled diabetes before the Kimmel-Steil-Wilson syndrome developed. Dr. Holcombe, Jr. testified that arteriosclerosis is almost invariably present in a diabetic of long standing, and that this glomerulosclerosis caused the edema manifested by plaintiff.
Regarding the numbness or lack of sensation in the lower right leg and the cel-lulitis the testimony is to the effect that it is common in people with diabetes of long standing. The numbness indicates a peripheral neuropathy which is a complication or residuum of diabetes or a diabetic neuropathy, and that it develops over several years.
From the above it can readily be seen that the conditions of which plaintiff complains are all caused directly or indirectly by diabetes of long standing and that these conditions may become manifest overnight. The process takes years to arrive at the point where it becomes noticeable overnight.
Although there was testimony to the effect that an infection can accelerate the diabetic condition, this was restricted by other testimony that it would be aggravated during the period of infection only and not have a lingering effect on the diabetes. It was generally agreed that during the infection the diabetic condition was aggravated but that when the infection is controlled the diabetes reverts to the condition that it was before. During infection it is more severe and more difficult to control, but in the normal course of events it gets worse day by day. Dr. Robertson testified that diabetes is generally aggravated by infection and that in this case it could have aggravated it. Dr. Lester stated that during the time of the infection that it did aggravate the diabetes, but did not venture a statement as to whether or not this aggravation had any residual effects. Dr. But-tross stated that the infection may have aggravated it, but couldn’t say that the diabetes remained aggravated once the infection was controlled, that is, that the diabetes was aggravated as long as the infection was there and uncontrolled, but once it is controlled it reverts to its previous state. Dr. Anderson testified that the infection aggravated the diabetes during the infection but when it is controlled the diabetes reverts.
There is also general agreement that in an extreme case of diabetes an infection is difficult to control. Furthermore, Dr. Hol-combe, Jr. testified that when he discharged plaintiff on January 5, 1959 the infection was completely controlled, and that he was discharged on February 17, 1959 as being free from infection and that so far as the infection was concerned he could go back to work and that the infection had not been a serious one.
Plaintiff has cited several cases in support of the proposition that he has met the burden of proof required. Ray v. International Paper Co., La.App.1953, 68 So.2d 803 is the only Louisiana case dealing with a claim for compensation due to aggravation of a pre-existing diabetic condition. In that case plaintiff, a diabetic, had a gangrenous condition of his leg which was injured while he was working. The evidence showed that the gangrenous condition was aggravated to such an extent that amputation of the leg was necessitated. The injury occurred July 1, 1952; plaintiff immediately quit work and first aid was administered; on July 6, he was admitted to the hospital where he remained until the leg was amputated on July 29, 1952. It *619 was held under these facts that the plaintiff had met the burden of proof in showing that the disability resulted from an employment accident. Lyons v. Swift & Company, La.App.1956, 86 So.2d 613 is cited to support the theory that in an aggravation case, where it is not certain that there was an aggravation, one must look to the claimant’s physical condition before and after the accident. If he was in apparent good health before the accident, but in poor health and totally disabled, thereafter, then it is to be construed that the accident caused or aggravated the pre-existing condition to such an extent that it hastened the normal result of the pre-existing condition. Cited for similar import is the case of Pixley v. Employers’ Mutual Liability Insurance Company of Wisconsin, La.App.1958, 102 So.2d 113. In both of these cases a pre-existing cancer was aggravated by an accident occurring on the job. Prior to the accidents in these cases the claimant had never experienced any difficulty with these conditions, but thereafter they were unable to continue the same work as before. In the case at bar plaintiff has offered several witnesses who testified that prior to this accident plaintiff could and did do a full day’s work; that he worked regularly; and that he was a gentleman of the trade; and that after the accident plaintiff couldn’t work. However, an examination of the record reveals that he had not worked at all for Western Construction Company in 1957, and had worked only a total of 164^ hours for them in 1958; that is 54 hours in the first quarter; 80.5 hours in the second quarter; 12.5 hours in the third quarter; and 17.5 hours in the fourth quarter until the date of the accident in 1958. (Plaintiff had worked solely for Western Construction Company for the past four years.) Counsel for defendant has suggested that since he worked for them for the past four years in this trade and for no one else and since he had worked only the few hours as shown above that it is obvious that something must have been wrong with him to keep him from working more. Note also that plaintiff testified that he had had to wear or at least had been wearing glasses for at least two or three years prior to the accident. Thus the fact of the matter is that plaintiff did not show that he was a full-time worker and it appears that he worked very little as a cement finisher. Under these circumstances we find that those cases have no application in the case at bar.
On the other hand there is a line of cases which propound rules of evidence for compensation cases to the effect that the disability must be directly traceable to the injury and it must be based on a preponderance of the evidence (even though the case be one under the compensation act). See Richey v. Union Paving Co., La.App. 1943, 151 So. 657; Barnes v. Dixie Drilling Co., La.App., 31 So.2d 292; Taylor v. Mansfield Hardwood Lumber Co., La.App., 65 So.2d 360; later expressions may be found at Card v. Southern Builders, Inc., La.App., 117 So.2d 675; Ruffin v. Travelers Ins. Co., La.App., 120 So.2d 532; and McNeal v. Fuqua, La.App., 121 So.2d 24, and Williams v. New Amsterdam Cas. Co., La.App., 121 So.2d 760. (Emphasis added.)
Plaintiff relies on the rule to the effect that if one is in apparent good health before an accident, but in ill health thereafter, then there is a presumption that there is a causal connection between the injury and the present condition. However, in the case of Peppers v. Toye Bros. Yellow Cab Co. et al., La.App., 198 So. 177, which employed the above rule as to the presumption, the attending physician testified that there was a “reasonable possibility” that the pre-existing disease was set in motion as a result of the accident. In the case at bar we find that the attending physicians and other medical experts who testified could not state with a reasonable degree of medical certainty that there was a causal relation and therefore the burden has not shifted to defendant to show that it was, so to speak, a mere coincidence that they occurred at the same time.
*620 Dr. Hart testified that he couldn’t state with a reasonable degree of medical certainty as to whether or not the infection in this particular case precipitated the poor eyesight that he found. Dr. Lester testified that he could not state with reasonable medical certainty that the injury and infection brought about the present diabetes and conditions. Dr. Buttross testified that he could not state with a reasonable degree of medical certainty that the infection brought about the present condition, but admitted that the diabetic condition was aggravated only temporarily; and that the infection did not have any bearing on the overall picture that the plaintiff presented such as kidney disease, and hypertension. Dr. Anderson stated that the infection positively had no effect on the diabetic condition, that is, ho causal connection, and that the infected toe did not cause these complications. Dr. Holcombe, Jr. testified that the infection was cured or healed when he released plaintiff and that the diabetic condition generally reverts to the state to which it would normally have advanced. Dr. Robertson, who testified that diabetes mellitus was caused by a malfunction of the pancreas, stated that he was not in a position to say that there had been an impairment of the pancreas as a result of the infection. From the above we conclude, as did the trial judge that there is no certainty that the infection, in this case, under these circumstances, did cause or precipitate the present disabilities of plaintiff. There is testimony to the effect that his diabetic condition was, although undetected, in such an advanced state that the disabilities were attributable to the diabetes which had gone uncontrolled for several years. Under the circumstances of this case we find the statement of the Idaho Court in the case of Zipse v. Schmidt Bros., 66 Idaho 30, 154 P.2d 171, to the effect that causal connection between disability and pre-exist-ing disease must be determined from the testimony of experts appropriate. Furthermore, we find this language in the case of Margoner v. American Marine Corporation, La.App., 120 So.2d 281, 283, appropriate, to wit: “ * * * the sole question is whether or not his pre-existing cancerous condition was illuminated or accelerated by the accident. There is an unusually voluminous transcript of testimony of transcendent medical experts, all of whom are certain that the final cause of death was the lung cancer and all but one of whom are certain that the occurrence had nothing whatever to do with the death four months later.” That situation is analogous to the case before us. In the case at bar we find that all of the medical testimony is in agreement that uncontrolled diabetes does cause the conditions complained of, but none, except the family doctor who is not a specialist, could state with a reasonable degree of medical certainty that the present conditions were accelerated by the accident. Therefore, we find, as did the trial judge, that the injury and infection did not precipitate or aggravate the pre-existing condition in such a manner as to bring about the present conditions of plaintiff.
Defendant has complained that the assessment of $30 as a medical fee for Dr. Robertson, for treating plaintiff’s diabetes during the period of infection, was in error and that the judgment should be reversed insofar as it makes that award. It argues that since there was no demand for that amount prior to the trial then it should not be awarded. Apparently defendant is considering this award as a penalty. However, we do not find that it is such, but rather do find that it was a just and due debt owed by defendant, since it has admitted that the diabetes was aggravated during the period of infection.
Plaintiff has asked that penalties be assessed under the provisions of LSA-R.S. 22:658. In view of our findings herein, plaintiff is not entitled thereto.
For the reasons as set forth hereinabove, we find nothing manifestly erroneous in the judgment of the trial court and accordingly affirm the judgment thereof.
Affirmed.